This is People v. Hollingsworth, 516-0195. Counsel for the appellant, you may proceed. Good morning. My name is Jordan Cohen. I represent W.D. Hollingsworth. Mr. Hollingsworth is currently serving time for a first-degree murder, even though a forensic pathologist, Dr. Spitz, who is certified as an expert, found that the cause of death was actually a stroke and not a homicide. So what happened was, on April 7, 2004, the victim was hit in the head with a gun by Mr. Hollingsworth's cousin, who was also charged. The victim was taken to the hospital. The victim remained conscious and alert and stable in the hospital. And 11 days later, on April 18, 2004, the victim died. So there's a couple of issues here, and I want to start with the doctrine of fundamental fairness, because a defendant should be allowed to withdraw his guilty plea when there's a misapprehension of the facts due to misrepresentations by counsel, or when the defendant has a defense worthy of consideration, or when the ends of justice would be served by trial. I would argue that all of those are relevant here. And that's on the strength of Dr. Spitz's report. So I want to quote some of the findings from that report. So Dr. Spitz, who was stipulated and certified as an expert to investigate the cause of death, he said that the injuries suffered by the victim were of the minor severity and that they had essentially healed, and the duration of his hospital stay, the victim was mostly being treated for the diseases that he already had prior to this incident. And that he was about to be discharged when he had the stroke. How long of a period was that? So it was 11 days. It was mid-April 7th, and he died April 18th. And when did he have the stroke during that period? On April 18th. Okay. Like, that was the day that he died. The day that he died. Okay. Yes. Thank you. And Dr. Spitz wrote that there was no direct cause and effect relationship between the injury suffered and the stroke. He also wrote that the injuries had no positive, no contributory role towards the death. So I would submit that on the basis of the report alone, that no jury could find Mr. Hinesworth guilty of first-degree murder because Dr. Spitz didn't leave any room for that. Now, of course, a jury would have to weigh Dr. Spitz versus the witnesses that the state would have. But at this stage, Mr. Hinesworth doesn't have to show that his defense would win. He only needs to show that he can articulate a plausible defense that is worthy of consideration. So I would argue that based on Dr. Spitz's written report alone, that Mr. Hinesworth should be allowed to withdraw his guilty plea and have a trial to resolve this factual dispute of the cause of death. And now I want to move on to the next issue, because the reason Mr. Hinesworth took a plea in the first place was due to the ineffectiveness of plea counsel Karen Craig. So for this, I need to show that both that she was ineffective and both for her ineffectiveness, Mr. Hinesworth would have went to trial. So Karen Craig, first of all, did not file any motion to obtain an expert to examine the cause of death. She was ready to go to trial without one. And Mr. Hinesworth filed that motion himself. Karen Craig also did not request a written report from Dr. Spitz. Because of that, she had to rely on her understanding of the science from a phone conversation with Dr. Spitz to be able to relay that information to Mr. Hinesworth. There's a lot of ‑‑ it's contested what exactly was said between her and Mr. Hinesworth, but I'm not going to bring up anything Mr. Hinesworth said about that. I'm just going to focus on her own testimony of what she said. So at the motion to withdraw the guilty plea hearing, Karen Craig summarized the findings as having ‑‑ as leaving quite a bit of room for argument. And that's what she said to Mr. Hinesworth. Now, quite a bit of room for argument is very different than the direct quotes that I gave earlier, that there's no direct cause and effect relationship, there's no causative or contributory role towards the death. And years later at the PCU hearing, Karen Craig would agree that the findings were unequivocal and there were more than just a bit of room for argument. Now, the State interprets these quotes, this language of quite a bit of room for argument. The State in its brief writes that this is actually the better phrasing or better advisement and that Craig was actually being a good advocate. Because this phrasing would lead Mr. Hinesworth to make what the State considered the smart deal or the smart decision to take the deal or to take the plea. I would argue that it was the State's interpretation of Karen Craig's actions would go beyond ineffectiveness and would actually go into unethical territory. And that's because counsel cannot hide the ball from her client. You know, she has a duty to candidly advise Mr. Hinesworth on aspects of the case. And she cannot withhold information or she cannot manipulate information in order to get Mr. Hinesworth to make a decision whether to take the plea or to go to trial. One way to think about this is that if Dr. Spitz had been the State's witness and they did not turn over his findings, that would be a grave violation because that's exculpatory evidence. So what Karen Craig did, she essentially committed a grave violation against her own client because she did not forward the exculpatory evidence to him. So how is Mr. Hinesworth supposed to go to trial when he doesn't have the strongest piece of evidence that was necessary to his defense ahead of time? Finally, I just have to show that Mr. Hinesworth would have gone to trial with this information. And for that, I would point to the State's brief at page 18 where they say that had Dr. Spitz's language been conveyed, that Mr. Hinesworth, and I quote, may have actually wanted to go to trial. That's the State's brief. That's not my brief. And I agree with that, that he would have. And there's a lot of reason to think he would have. Even Karen Craig admitted that Mr. Hinesworth was not looking to just get a good deal. He was looking to go to trial. This is a man who filed so many pro se motions leading up to trial that the court had to actually tell him to stop and that it was too much. He had to stop filing pro se motions. He filed about 10 of them. He also filed his motion to withdraw the guilty plea immediately after he made the guilty plea. So I think that we have every reason to believe that Mr. Hinesworth would have went to trial with this information. The State also characterized Mr. Hinesworth as being not unsophisticated and that he made a rational calculation. And what the State describes is that he also had a balancing test of considering different factors. But that analysis is skewed when he doesn't have the exculpatory evidence that he needs for his defense. That throws off any analysis that he could make. So if he had the information that he has now, we have every reason to believe he would have went to trial. And, of course, I'm going to show that there's a reasonable probability he would have went to trial, as he's currently requesting here today. Because even now he has the same risk that he could win an appeal, go to trial, lose, and potentially get a greater sentence. What is our standard of review at this stage? So at this stage, the standard of review is whether the court was manifestly erroneous, because it was at the third stage. This was a third stage evidence you're hearing on a post-conviction petition, correct? Yes, Your Honor. And I don't think Mr. Hinesworth has any trouble meeting that standard. And you do recognize that we do a great difference to the trial court's factual findings? Yes, Your Honor. And to that point, I would just point out that the written report of Dr. Spitz was not produced until the PC stage. So even at the motion to withdraw the guilty plea hearing, they did not know the actual findings of the report. And even at the PC hearing, I would say that Karen Craig was misleading in her attempts to obtain the expert. How does that matter when the expert actually was obtained, about whose idea it was? Well, I think it matters because it goes towards her ineffectiveness and also her failure to relay the findings to Mr. Hinesworth. How could it be ineffective when there was one obtained? Well, there wasn't one obtained until years later. So when he made the guilty plea, the report didn't exist yet. It wasn't written. She never asked for a written report. She just talked to Dr. Spitz over the phone. And that was really the issue. But he had been retained when she had talked to him. And wasn't there evidence at the hearing that she had relayed to the defendant what he would have testified to? Your Honor, she testified that what she said to Mr. Hinesworth was what I said earlier, that the report left quite a bit of room for argument. So she did not convey the strength of Dr. Spitz's conclusion to Mr. Hinesworth based on the actual quotes that I read. And she even agreed at the PC hearing that it was actually unequivocal. It was more than just a bit of room for argument. And that was the issue. So I would request that Mr. Hinesworth be allowed to withdraw his guilty plea and get a new trial on the basis of both ineffectiveness and on the basis of a strength of Dr. Spitz's written report alone. I think both of those show that this factual dispute of cause of death needs to be resolved. And that can only happen by a trial. Thank you. Thank you, counsel. Counsel for Appellee. Would you state your name, please? Sorry. May I please report? My name is Angud Singh. I represent the people of Illinois. Are you a 7-11? Yes, Your Honor. And you're here with Mr. Robinson? I am, Your Honor. Thank you. You may proceed. This appeal, as is pointed out, rises from a third-stage evidentiary hearing that was found against the defendant. I just want to step back, Your Honors, and point out the fact that the defendant in this case, the reason why he took the plea is because he wanted to take responsibility for what happened to the victim. He assessed the totality of evidence before him, which included the fact that he was apprehended at the scene of the crime, which was a home invasion. The victim's head was clobbered with a gun. He was 72 years old. At the scene, the victim pointed out to police that the defendant committed the crime, and those statements failed to be kept out in a motion in limine. And so, you know, it's also important to go back to the fact that we're on a manifest error standard here, which requires that the opposite has to be clearly evident. During the evidentiary hearing at the third stage, the plea counsel testified that she told him the conclusion of the expert witness. She was asked directly, did you relay the conclusion of his expert to the defendant? She said yes. And that's not surprising because the defendant himself had a lot of investment in getting a witness. He had filed pro se. She had searched for an expert, found one eventually in Michigan. She had obtained from the trial court the funds necessary to obtain that witness? Yes, Your Honor. So she had to adopt the pro se motion. She had to file a motion to authorize $4,000 to get the expert. And the defendant also testified at trial that he knew that the expert was coming. It's not surprising that there was a ruling against the defendant in this case because how believable is it that he didn't know his own expert's opinion? And so on a manifest error standard, the fact finder in that case found her to be more credible. And furthermore, this is a new theory that the defendant is using in this case of the motion to withdraw a guilty plea. He said that the reason he took a plea deal was because he didn't know that his expert was coming. And now it's that he doesn't know what his expert was going to say. In regard to the second issue regarding impeaching over the fact that it may have not been only her idea to get an expert witness, as you know, at the post-conviction evidentiary hearing, the standard is a lot lower than in Strickland. But in a more general point, the law can't assume that the effect of impeachment would occur as to the credibility, nor that this was even something that somebody would impeach the witness on. And so that's why we refer to it as an issue of trial strategy. The post-conviction third stage evidentiary hearing was about what the defendant knew as to his own expert's conclusion. It had nothing to do with whose idea it may have been first to think about getting a witness. The plea counsel was not asked, did you file the motion first? She was asked whether it was only her idea. They must have discussed it. She adopted it. The motion, she again filed a motion to get $4,000 to get the witness for him. Now, as to the third issue regarding fundamental fairness, I think it begs the question about what really is fundamentally fair. This attorney of his found, again, a witness all the way in Michigan for him who was willing to say, well, the injuries sustained by a 72-year-old victim had nothing to do with the injuries sustained in the crime scene. So there was plenty of reason why somebody in the defendant's shoes would have taken a plea deal in this case, even if there was an expert that said, no, it had nothing to do with the injuries sustained in the crime scene. And what did Dr. Nanduri, could you summarize what she found? I believe that you're referring to the medical examiner? The pathologist, yes. Thank you for asking that, because it goes to why he pled guilty. The medical examiner concluded that the injuries led to the rule that it was death by homicide, aggravated by preexisting conditions that the victim had suffered. I mean, he was 72 years old. The idea that he didn't have any preexisting conditions is, I mean, I hope that if- He's starting to offend some of us. Yeah, no, I apologize. And so when we talk about fundamental fairness, I think that the state also could pay at least a couple of thousand dollars to get the report for the second stage hearing. And so the defendant is claiming somehow that, you know, we need to get written reports in order to be effective attorneys to our clients. I mean, she had spent $4,000. She wanted to, as she said, at the third stage, save the state further money. And so pleading guilty for 23 years for homicide when co-defendant Cousin, who was also found at the crime scene, got 40 years in his plea deal. I mean, I don't know what's fundamentally unfair about that. I think that that's quite unfair. Is there also a home invasion charge? Yes, that's correct, Your Honor. And wasn't that dropped as a part of the plea agreement? I think it was, Your Honor. Yes, I believe so. And so we have to remember, again, that we're at a manifest error standard. And the testimony, when asked, because that was the crucial inquiry at that hearing, did you relay the conclusions to the defendant? She affirmatively said yes. And, again, for those reasons I've already stated, it's very difficult to believe that this defendant did not know the conclusions of his expert. And there's no other questions, Your Honors. We ask that you affirm the lower court's ruling. Thank you. Thank you, Counsel. Rebuttal. Thank you. Thank you for your support. The State mentioned that he doesn't know what's fundamentally unfair about Mr. Hines was serving 23 years. And I'll answer that question. It's fundamentally unfair that he's serving time on a murder when the cause of death was a stroke. And what I want to say is that it's important not to substitute my medical expertise, which I have none, or the State's medical expertise, or even Dr. Manduri's medical expertise. Dr. Spitz was certified as an expert. And, again, I don't need to prove that Mr. Hines was worth one at trial based on the report, only that Dr. Spitz's report gives him plausible defense that's worthy of consideration. So it doesn't matter how believable it is that he came to that conclusion. He's been certified as an expert, and that was his conclusion. Next, opposing counsel talked about that Karen Craig relayed the conclusion to Mr. Hollingsworth and that it's not believable that Mr. Hollingsworth didn't know the conclusion of his own expert. But, once again, we don't need to speculate because Karen Craig herself testified to what she believed the conclusion was, which is that it was a bit of a loose argument. So if she relayed that conclusion to Mr. Hollingsworth, that is still not a good enough conclusion. That is not what Dr. Spitz said. He said there's no direct cause and effect relationship, that there's no positive or contributory role, that the injury was of minor severity and it was essentially healed, and that the victim was about to be discharged from the hospital. So it's not about whether – so even if she relayed the conclusion, she didn't understand it, which is because she didn't get the written report. The state also mentions all the evidence against Mr. Hollingsworth, and I would just point to that's exactly why he would take a plea without Dr. Spitz's report, because that was necessary for his defense. He didn't have a defense without this cause of death issue. Finally, just this concept that Karen Craig was trying to save the state money by not getting a written report, I would argue that doesn't really hold up when you have a client facing a first-degree murder charge, especially because 23 years in the county prison is probably going to cost the county more money than getting a written report. So ultimately, the cause of death, like he's serving murder for what may have been a stroke, and only a jury can resolve that. None of our medical opinion can be substituted for that. And the jury needs to judge basically Dr. Spitz versus Dr. Nanduri and decide if it's been proven beyond a reasonable doubt. So that's the fundamental fairness. And then the ineffectiveness of Karen Craig, like I said, she's basically committing a Brady violation against her own client. She didn't give him the exculpatory evidence that he needs. If Dr. Spitz was the state's witness, this would be an open-and-shut case, but it's just because it was his own client that now has to argue ineffective assistance of counsel. Karen Craig fell also to the point that she was going to get the expert and that they must have talked about it. Well, this happened days before trial. So Karen Craig was ready to go to trial without an expert when Mr. Hollingworth filed the report himself. And Karen Craig, on the record, said, I have not seen this three different times, said, I have not seen this motion, so I don't know whether to adopt it or not. And this was days before the trial. So you can't tell me that Karen Craig had discussed this with Mr. Hollingsworth. He filed the motion himself. Karen Craig was never going to challenge it. She also didn't invest in getting the written report. And she just didn't understand it because she could not summarize it accurately. So for all these reasons, Mr. Hollingsworth requests that his guilty plea can be withdrawn so that he can finally go to trial with the medical information known, which was not known for him, for the entire plea and the motion to withdraw a guilty plea hearing. So if there's nothing further, that's all I have. Thank you. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course. Thank you.